IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MYLDRINE CLARK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No. 3:21-cv-1357-DWD** |
| | ) | |
| OLIN WINCHESTER, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM & ORDER**</u>

**DUGAN, District Judge:**

Before the Court is Defendant's Motion for Summary Judgment and Supporting Memorandum (Docs. 59 & 60) ("Motion") under Federal Rule of Civil Procedure 56 and Local Rule 56.1. Fed. R. Civ. P. 56; L.R. 56.1. Plaintiff filed a Memorandum in Opposition (Doc. 65) to the Motion. The parties also fully briefed the material facts. (Docs. 59-1, 64, 65-1, 68, 69).[1] As explained below, the Motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

Plaintiff, who is an African American female, began working in manufacturing for Defendant in 1992. (Doc. 53, pgs. 3-4). She was promoted, without a formal process, to

---

[1] The parties very thoroughly briefed the material facts under Local Rule 56.1(b)–(d). When doing so, each party also objected, at times repeatedly, to the admissibility or effect of certain evidence relied upon by the other party. (Docs. 64, generally; 68, generally). In reaching a resolution of Defendant's Motion, the Court emphasizes that it has addressed many but not all of the factual allegations of the parties, as it "is 'not bound to discuss in detail every single factual allegation put forth at the summary judgment stage.' " *Outley v. City of Chicago*, 354 F. Supp. 3d 847, 856 (N.D. Ill. 2019) (quoting *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011)). In addition, the Court has considered the parties' many objections. As always, the Court relies only upon the portions of the parties' submissions that are supported by the record and necessary to a resolution of the Motion. *See Outley*, 354 F. Supp. 3d at 856.

primer foreman in 2011. (Docs. 59-1, pg. 3; 64, pg. 4). Plaintiff reports to the general foreman, who has "most of the same general job duties." (Doc. 53, pg. 4).

In June 2011, June 2014, February 2017, August 2017, and November 2019, respectively, Plaintiff alleges Defendant selected or promoted a Caucasian male to the position of general foreman without a formal selection process or consideration of other candidates, like Plaintiff, for the position. (Docs. 53, pg. 4; 59-1, pg. 11; 64, pg. 20; 68, pg. 13). Plaintiff alleges she was more qualified than, or at least as qualified as, the Caucasian men selected for or promoted to the general foreman positions. (Doc. 53, pg. 4).

Plaintiff made an internal ethics hotline call in March 2017 about the events that occurred the prior month. (Docs. 65-1, pg. 8; 68, pgs. 38-40). On September 21, 2017, Plaintiff filed an Intake Questionnaire with the Equal Employment Opportunity Commission ("EEOC"), alleging race and sex discrimination related to the alleged failure to promote her to the position of general foreman since 2011. (Docs. 53, pgs. 2, 5; 53-1). Plaintiff filed a Charge of Discrimination related to race discrimination, sex discrimination, and retaliation, among other things, with the EEOC on February 5, 2018. (Docs. 53, pgs. 2, 5; 53-2). That Charge of Discrimination, like the Intake Questionnaire, alleged Defendant failed to promote African Americans and females to the general foreman position. (Doc. 53-2). On May 23, 2019, Plaintiff amended her Charge of Discrimination with the EEOC, making similar allegations. (Docs. 53, pgs. 2-3, 5; 53-3).

In October 2019, despite never formally working in labor relations or human resources, Plaintiff applied for a managerial position in labor and employee relations. (Docs. 53, pg. 5; 59-1, pg. 25; 64, pg. 42). On January 13, 2020, Plaintiff complained to Kim

Murphy, the director of operations for human resources, about the failure to receive an interview for the managerial position. (Doc. 53, pg. 5). On June 11, 2020, Plaintiff learned that Defendant hired an external applicant, Tanya Sassenrath, who allegedly had fewer qualifications than Plaintiff, for the managerial position in labor and employee relations. (Doc. 53, pg. 5). Ms. Sassenrath is a Hispanic female. (Docs. 59-1, pg. 27; 64, pg. 47).

On January 24, 2021, Plaintiff filed a Complainant Information Sheet, alleging race discrimination and retaliation related to Defendant's alleged failure to interview or hire her for the managerial position in labor and employee relations, with the Illinois Department of Human Rights ("IDHR"). (Docs. 53, pgs. 3, 6; 53-5). In April 2021, Ms. Sassenrath, who was selected for that managerial position, left Defendant's employ. (Doc. 53, pg. 6). Defendant reposted the position under a similar title. (Docs. 53, pg. 6; 65-1, pg. 17; 68, pg. 71). Plaintiff applied for that posted position; however, to date, she has not been granted an interview and Defendant has not filled the position. (Doc. 53, pg. 6).

On July 30, 2021, the EEOC issued a Dismissal and Notice of Rights in relation to Plaintiff's Charge of Discrimination. (Docs. 53, pg. 3; 53-6). On September 7, 2021, Plaintiff filed a separate Charge of Discrimination, related to the allegations contained in the January 24, 2021, Complainant Information Sheet, with the IDHR. (Docs. 53, pgs. 3, 6; 53-7). The IDHR issued a Notice of Dismissal for Lack of Substantial Evidence in relation to that Charge of Discrimination on April 11, 2022. (Docs. 53, pg. 3; 53-8). As a result of these circumstances, Plaintiff states she exhausted all administrative remedies. (Doc. 53, pg. 3).

Now, Plaintiff has filed a 3-Count Second Amended Complaint. In Count I, Plaintiff alleges race discrimination and retaliation under Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e *et seq.* (Doc. 53, pgs. 6-9). In Count II, Plaintiff alleges sex discrimination and retaliation under Title VII. (Doc. 53, pgs. 9-13). Counts I and II each relate to Defendant's alleged failure to promote Plaintiff to the general foreman position, particularly in February 2017, August 2017, and November 2019, due to her race, sex, and/or complaints to the EEOC. (Doc. 53, pgs. 7-11). In Count III, Plaintiff alleges race discrimination and retaliation under the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.* (Doc. 53, pgs. 12-13). Count III is based upon Defendant's alleged failure, due to Plaintiff's race and complaints of discrimination, to consider her for the managerial positions in labor and employee relations. (Doc. 53, pgs. 12-13).

## II. ANALYSIS

Defendant seeks summary judgment on all Counts. The Court grants that relief if Defendant shows there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a); *accord Driveline Systems, LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019) (quoting *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015); citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Assertions that a fact cannot be or is genuinely disputed must be supported by citations to particular materials of record. *See* Fed. R. Civ. P. 56(c)(1)(A). Alternatively, the assertions must be supported by a showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce evidence to support the fact. *See* Fed. R. Civ. P. 56(c)(1)(B).

If Defendant presents evidence showing the absence of a genuine dispute of material fact, then the burden shifts to Plaintiff to provide evidence of specific facts creating a genuine dispute of material fact. *See Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir.

2012) (citing *Hudson Ins. Co. v. City of Chic. Heights*, 48 F.3d 234, 237 (7th Cir. 1995)). A genuine dispute of material fact exists if there is sufficient evidence for Plaintiff to receive a verdict. *See Driveline Systems*, 936 F.3d at 579 (quoting *Aregood v. Givaudan Flavors Corp.*, 904 F.3d 475, 482 (7th Cir. 2018), *reh'g denied* (Oct. 30, 2018)). Speculation about a material fact, unsupported by evidence, does not defeat summary judgment. *See Moje v. Fed. Hockey League, LLC*, 377 F. Supp. 3d 907, 920 (N.D. Ill. 2019) (citing *Sbika v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 721 (7th Cir. 2018); *Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994)).

Also, when considering a motion for summary judgment, the Court does not determine credibility, weigh the evidence, or decide which inferences to draw from the facts, as those tasks are within the province of a jury. *See Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (quoting *Johnson v. Advocate Health & Hospitals Corp.*, 892 F.3d 887, 893 (7th Cir. 2018)). Instead, based on the evidence of record, the Court merely decides whether any genuine dispute of material fact requires a trial. *See id.* (quoting *Johnson*, 892 F.3d at 893). When doing so, the Court construes the evidence in a light most favorable to the nonmovant while also avoiding the temptation of deciding one party's version of facts is more likely true. *See id.* (quoting *Johnson*, 892 F.3d at 893).

Having outlined these procedural principles, the Court proceeds to a discussion of the substantive law governing Plaintiff's claims. Upon doing so, the Court will proceed to consider the specific arguments raised by the parties on Defendant's Motion.

### A. Substantive Law

Before bringing claims under Title VII or the IHRA, a plaintiff must exhaust his or her administrative remedies by filing a complaint with the federal or state agency within

300 days of the wrongful act. *See Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 270 (7th Cir. 2004) (citing *Volovsek v. Wisconsin Dep't of Agric., Trade & Consumer Prot.*, 344 F.3d 680, 687 (7th Cir. 2003); 42 U.S.C. § 2000e-5(e)(1)); *accord Carter v. Dart*, 262 F. Supp. 3d 713, 720 (N.D. Ill. 2017); *see also* 775 ILCS 5/7A-102(A)(1), (A-1). Courts review only the allegations included in, or the allegations reasonably related to and growing from the allegations included in, that complaint. *See Dandy*, 388 F.3d at 270 (quoting *Haugerud v. Amery School Dist.*, 259 F.3d 678, 689 (7th Cir. 2001)); *see also Moore v. Vital Prods., Inc.*, 641 F.3d 253, 257 (7th Cir. 2011) ("To be 'like or reasonably related,' the relevant claim and the EEOC charge 'must, at minimum, describe the same conduct and implicate the same individuals.' ").

Likewise, courts generally only consider evidence from within the 300-day period. *Dandy*, 388 F.3d at 270 (citing *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999). The limitations period is not jurisdictional in nature, however, so it is subject to equitable considerations. *Id.* (citing *Volovsek*, 344 F.3d at 687). It is notable, though, that the continuing violation doctrine does not apply to discrimination or retaliation claims stemming from a failure to promote, as such claims involve discrete acts. *See id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002)); *see also Carter*, 262 F. Supp. 3d at 720 ("It is well settled, however, that an employer's failure to promote an employee is a discrete act, and thus is not subject to the continuing violation doctrine.").

Further, on the merits of her claims, Plaintiff may rely on direct and/or circumstantial evidence, "and 'all evidence belongs in a single pile and must be evaluated as a whole.' " *Runkel*, 51 F.4th at 741 (quoting *Igasaki v. Illinois Dep't of Fin. and Prof. Reg.*, 988 F.3d 948, 957 (7th Cir. 2021)). This is because the Seventh Circuit has rejected

distinctions between direct and circumstantial evidence and the corresponding methods of proof. *Id*. (citing *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

In light of Plaintiff's claims, the Court initially notes that the same legal framework applies to Title VII claims (Counts I and II) as IHRA claims (Count III). *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 382-83 (7th Cir. 2016). Under Title VII, it is illegal for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Runkel*, 51 F.4th at 742 (quoting 42 U.S.C. § 2000e-2(a)(1)). A plaintiff need not present evidence that race or sex "was the sole cause or even a but-for cause" of the employment action. *Id*. Rather, the plaintiff's race or sex must merely be a motivating factor in the employment action. *Id*. (quoting *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022)); *see also* 42 U.S.C. § 2000e-2(m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that race…[or] sex…was a motivating factor for any employment practice, even though other factors also motivated the practice."). To establish a *prima facie* case of discrimination based on a failure to promote in this case, Plaintiff must show (1) she is a member of a protected class, (2) she was qualified for the promotion, (3) she was denied the promotion, and (4) the promotion was given to a member outside of the protected class who was not better qualified. *Dandy*, 388 F.3d at 272 (citing *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003)); *accord Gross v. Peoples Gas Light and Coke Co.*, 634 F. Supp. 3d 464, 493 (N.D. Ill. 2022) (quoting *Barnes v. Bd of Trs. of the Univ. of Illinois*, 946 F.3d 384, 389 (7th Cir. 2020)).

The second and fourth requirements for such a *prima facie* case, which are primarily at issue here, are distinct. *Gross*, 634 F. Supp. 3d at 493 (citing *Outley*, 354 F. Supp. 3d at 863-64). As to the second requirement, Plaintiff must show she was qualified, not most qualified, for the position. *Outley*, 354 F. Supp. 3d at 863 (citing *Baron v. City of Highland Park*, 195 F.3d 333, 340 (7th Cir. 1999)). If Plaintiff was unqualified for any reason, then there is no inference of discrimination that will establish a *prima facie* case. *Gross*, 634 F. Supp. 3d at 493 (quoting *Pafford v. Herman*, 148 F.3d 658, 669 (7th Cir. 1998)). Notably, an employee's own view of his or her performance or qualifications, without more, cannot create a genuine dispute of material fact. *See Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 602 (7th Cir. 2001); *accord Robertson v. Dep't of Health Sers.*, 949 F.3d 371, 381 (7th Cir. 2020); *Justise v. Zenith Logistics, Inc.*, 186 Fed. App'x 680, 682 (7th Cir. 2006). As to the fourth requirement, the Court considers all relevant factors for analyzing whether the promoted person was not better qualified, *i.e.*, had similar or lesser qualifications than Plaintiff, including whether the employees: (1) had the same job description; (2) were subject to the same standards; (3) had the same supervisor; and (4) had comparable experience, education, and other qualifications to the extent such factors were considered by Defendant in the promotion decision. *Gross*, 634 F. Supp. 3d at 493 (quoting *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003)); *Outley*, 354 F. Supp. 3d at 864.

Under Title VII, it is also illegal to retaliate against an employee because he or she "made a charge, testified, assisted, or participated in any manner in an investigation" of racial or sexual discrimination. *Runkel*, 51 F.4th at 746 (quoting 42 U.S.C. § 2000e-3(a)). Plaintiff establishes a *prima facie* case of retaliation if a reasonable jury could find: (1) she

engaged in protected activity, (2) she suffered an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action. *See id.* (citing *Rozumalski v. W.F. Baird & Assocs.*, 937 F.3d 919, 924 (7th Cir. 2019)); *accord Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1106 (7th Cir. 2012).

Statutorily protected activity includes both formal complaints to the EEOC or IDHR and informal complaints to Defendant. *Carter*, 262 F. Supp. 3d at 725 (citing *Davis v. Time Warner Cable of Se. Wisconsin, L.P.*, 651 F.3d 664, 674 (7th Cir. 2011)). However, Plaintiff is required to show Defendant, when taking the adverse employment action, was motivated by "a 'retaliatory animus.' " *Brown*, 700 F.3d at 1106 (quoting *Smith v. Bray*, 681 F.3d 888, 901 (7th Cir. 2012)). It is not enough to produce evidence that "a 'retaliatory animus' " could have influenced Defendant, as the "favor toward the nonmoving party on summary judgment 'does not extend to drawing inferences that are supported by only speculation or conjecture.' " *Id.* at 1108 (citing *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009); quoting *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)); *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 918 (7th Cir. 2022) (stating but-for causation does not mean "the only cause"; rather, it means "that the adverse [employment] action would not have happened without the [protected] activity" underlying the retaliation).

If Plaintiff establishes a *prima facie* case of discrimination or retaliation, then the burden shifts to Defendant to articulate a legitimate nondiscriminatory or nonretaliatory basis for the employment action. *See Outley*, 354 F. Supp. 3d at 863 (quoting *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 891-92 (7th Cir. 2016)); *Robertson v. Dep't of Health Services*, 949 F.3d 371, 377-78 (7th Cir. 2020). Plaintiff must then show the employer's stated reason for

the employment action is a pretext. *See Outley*, 354 F. Supp. 3d at 863 (quoting *Riley*, 829 F.3d at 891-92); *Robertson*, 949 F.3d at 378. An employer's reasoning is generally pretextual if it is false, such that discriminatory or retaliatory intent may be inferred. *See Runkel*, 51 F.4th at 744-45; *Robertson*, 949 F.3d at 378; *see also Outley*, 354 F. Supp. 3d at 866 (noting a showing of pretext requires more than faulty reasoning or mistaken judgment by the employer, as a pretext involves " 'a lie, specifically a phony reason for some action.' ").

If a defendant articulates the employees' comparative qualifications as the legitimate and nondiscriminatory or nonretaliatory basis for the employment action, then the plaintiff's qualifications may serve as evidence of pretext only "if the differences…[in qualifications] were 'so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified.' " *Hobbs v. City of Chicago*, 573 F.3d 454, 462 (7th Cir. 2009) (quoting *Mlynczak v. Bodman*, 442 F.3d 1050, 1059-60 (7th Cir. 2006)); *accord Robertson*, 949 F.3d at 381. Also, nothing prohibits an employer from considering subjective promotion criteria; therefore, unless the subjective criteria was a mask for discrimination or retaliation, the fact that the promotion decision was based solely on subjective criteria will rarely, if ever, prove pretext. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir. 2002) (quoting *Denney v. City of Albany*, 247 F.3d 1172, 1185 (11th Cir. 2001); citing *Weihaupt v. Am. Med. Ass'n*, 874 F.2d 419, 429 (7th Cir. 1989); *Dorsch v. L.B. Foster Co.*, 782 F.2d 1421, 1427 (7th Cir. 1986)). In the absence of pretext, "the court 'does not sit as a superpersonnel department that reexamines an entity's business decisions.' " *Outley*, 354 F. Supp. 3d at 868 (quoting *Baron*, 195 F.3d at 341); *Hunt v. Indiana Dep't of Local Gov. Fin.*, No. 19-cv-4573, 2022 WL 866170

(S.D. Ind. March 23, 2020) ("An employer can make a mistake or act unfairly when it comes to making personnel choices while still not being discriminatory.").

### B. Discrimination and Retaliation under Title VII (Counts I & II)

In support of its Motion on Counts I and II, Defendant argues Plaintiff's Title VII claims "fail out of the gate" because Plaintiff did not exhaust all administrative remedies. (Doc. 60, pgs. 9-10). Defendant notes Plaintiff's Charge of Discrimination, related to the alleged failure to promote her to general foreman, was filed with the EEOC on February 5, 2018. (Doc. 60, pg. 11). Therefore, Defendant states Plaintiff cannot allege a failure to promote occurring before April 11, 2017 (*i.e.*, 300 days before February 5, 2018). (Doc. 60, pg. 11). This would bar the allegations from June 2011, June 2014, and February 2017. (Docs. 53, pg. 4; 60, pg. 11). Defendant also notes Plaintiff amended her Charge of Discrimination with the EEOC on May 23, 2019. (Doc. 60, pg. 11). Defendant suggests this bars Plaintiff from alleging a failure to promote after May 23, 2019. (Doc. 60, pg. 11). This would bar Plaintiff's allegation from November 2019. (Docs. 53, pg. 4; 60, pg. 11).

On the merits of Counts I & II, Defendant argues Plaintiff's claims must fail because she cannot establish a *prima facie* case of discrimination, based on race or sex, or retaliation. (Doc. 60, pg. 10). As to discrimination, Defendant argues Plaintiff relies on "unfounded speculation" stemming from the fact that she is an African American female and those who were selected for or promoted to the general foreman positions were not. (Doc. 60, pgs. 17-18). Plaintiff allegedly lacked the interpersonal skills necessary for a general foreman, as shown by "a substantial number of complaints" about her treatment

of supervised employees. (Doc. 60, pg. 20). Defendant also rejects Plaintiff's contention that she was more qualified for the general foreman positions. (Doc. 60, pgs. 18-19).

Even if Plaintiff could make out a *prima facie* case of discrimination or retaliation under Title VII, Defendant argues the record demonstrates that Defendant had legitimate, nondiscriminatory, nonretaliatory, and nonpretextual motivations for its hiring decisions. (Doc. 60, pgs. 10, 24). In short, Defendant argues Plaintiff was not selected for or promoted to the general foreman position "because it [was] determined that she was not qualified or less qualified, and the individuals selected had relevant experience and qualifications that Plaintiff lacked." (Doc. 60, pg. 24). Moreover, as to the alleged failure to promote in June 2011, June 2014, and February 2017, Defendant states it could not have retaliated against Plaintiff because she had not yet engaged in protected activity. (Doc. 60, pg. 18 n. 7). Aside from these inconsistencies, Defendant argues there is no evidence it failed to promote Plaintiff due to her complaints of discrimination. (Doc. 60, pg. 17).

In response, Plaintiff argues she properly exhausted her administrative remedies dating back to November 25, 2016. (Doc. 65, pg. 7). Plaintiff relies on the fact that she filed her Intake Questionnaire with the EEOC on September 21, 2017, *i.e.*, 300 days after November 25, 2016. (Doc. 65, pgs. 7-8). When doing so, Plaintiff essentially concedes that Defendant's alleged failure to promote in June 2011 and June 2014 cannot form the basis for Counts I and II. (Doc. 65, pg. 7). However, Plaintiff stresses that those promotion decisions are relevant as background evidence in this case. (Doc. 65, pgs. 7, 9-10).

On the merits, Plaintiff emphasizes that Defendant never rejected her as a general foreman position because it never posted the available positions. (Doc. 65, pg. 3 n. 1).

Hence, Plaintiff was not given the opportunity to apply. (Doc. 65, pg. 3 n. 1). Plaintiff notes, "[o]n numerous occasions, [she] told her supervisors and human resources that she wanted to be promoted to a general foreman position." (Doc. 65, pg. 3 n. 1).

Plaintiff also argues she met the necessary criteria for becoming a general foreman. (Doc. 65, pg. 4). Plaintiff explains, on a daily basis since 2008, she managed the bargaining unit employees in the areas of safety, performance, budgeting, and scheduling. (Doc. 65, pg. 4). Indeed, Defendant's former manager and director of labor relations, Fred Carpenter, who acted as Plaintiff's mentor, allegedly viewed her as "a subject matter expert in grievances and issuing disciplinary action." (Docs. 65, pg. 4; 65-1, pg. 4; 68, pgs. 18-19). Plaintiff indicates she oversaw, interpreted, and enforced Defendant's collective bargaining agreement. (Doc. 65, pg. 4). Further, Plaintiff claims she has the necessary interpersonal skills for effective communication. (Doc. 65, pg. 4).

Next, Plaintiff argues she was equally, if not more, qualified than those selected for or promoted to general foreman. (Doc. 65, pg. 5). As to her performance reviews, Plaintiff states: "[w]hile some of Plaintiff's reviews from 2011 to 2017 [we]re below satisfactory, Plaintiff contends such reviews are illegitimate and discriminatory." (Doc. 65, pg. 5). In 2012, Mr. Carpenter was allegedly assigned to serve as Plaintiff's mentor to evaluate problems in her department, including as to the way a supervisor, Kenneth Pohlman, was handling Plaintiff's performance reviews. (Docs. 65, pgs. 5-6; 65-1, pgs. 4, 9; 68, pgs. 18-20, 44-45). Over the next few years, Mr. Carpenter allegedly found Plaintiff's performance improved, so she should be progressing with Defendant. (Docs. 65-1, pg. 5;

65, pg. 6; 68, pg. 21). On September 28, 2017, Mr. Pohlman was removed as a manager in the primer assembly department. (Doc. 65, pg. 6 n. 4; 65-1, pg. 10; 68, pgs. 46-48).

Finally, as to her retaliation claims, Plaintiff notes she engaged in protected activity by making an internal ethics hotline call in March 2017, filing an Intake Questionnaire with the EEOC in September 2017, participating in an investigation of her complaint, and filing Charges of Discrimination with the EEOC on February 5, 2018, and May 23, 2019. (Doc. 65, pgs. 15-16). Plaintiff argues it was because of this protected activity that she was not selected for or promoted to general foreman in August 2017 and November 2019, respectively. (Doc. 65, pgs. 15-17). More specifically, Plaintiff argues Defendant failed to engage in a formal selection or promotion process before giving less qualified individuals, namely, John Greg Scott and Ian Dietrich, the general foreman positions. (Docs. 65, pgs. 16-17; 65-1, pgs. 11-12; 68, pgs. 49, 54-55).

Here, the Court agrees with Plaintiff that filing an Intake Questionnaire with the EEOC on September 21, 2017, followed by Charges of Discrimination with the EEOC on February 5, 2018, and May 23, 2019, encompasses the employment decisions made by Defendant in relation to the general foreman positions in February and August 2017. *See E.E.O.C. v. Watkins Motor Lines, Inc.*, 553 F.3d 593, 597-98 (7th Cir. 2009) ("[A] document may be a 'charge' even if it lacks an appropriate caption and charging language. A piece of paper that alleges discrimination and asks the agency to take remedial action suffices."); (Docs. 53, pgs. 2, 4, 7-11; 53-1; 53-2; 53-3). As Plaintiff appears to concede, this means Defendant's employment decisions in June 2011 and June 2014

14

cannot form the basis for Counts I and II. (Doc. 65, pg. 7).[2] Also, the Court agrees with Defendant that Plaintiff did not exhaust her administrative remedies with respect to the employment decision made by Defendant in November 2019. Plaintiff admits she did not file a Charge of Discrimination within 300 days of that date, and the alleged failure to promote was a discrete act that does not constitute a continuing violation or reasonably relate to the May 23, 2019, Charge of Discrimination. *See Dandy*, 388 F.3d at 270; *Moore*, 641 F.3d at 257; *Carter*, 262 F. Supp. 3d at 720. As such, the remaining allegations relate to Defendant's employment decisions in February and August 2017. (Doc. 53, pgs. 4, 7-11).

As to Plaintiff's *prima facie* case for racial and sexual discrimination in relation to the employment decisions in February and August 2017, Plaintiff is clearly a member of a protected class who was denied a promotion. *See Dandy*, 388 F.3d at 272; *Gross*, 634 F. Supp. 3d at 493. As such, the parties focus on whether Plaintiff was qualified for a promotion to general foreman and whether the person actually promoted to that position was not better qualified. *See Dandy*, 388 F.3d at 272; *Gross*, 634 F. Supp. 3d at 493.

On the former question, the Court notes that a general foreman "is responsible for managing the daily activities of the bargaining unit employees and several rotating shift Foreman within their respective departments." (Docs. 59-1, pgs. 11-12; 64, pg. 21). The minimum job requirements for a general foreman, per Defendant's job description, are a

---

[2]Although the evidence surrounding the employment decisions in June 2011 and June 2014 may have a limited value when compared to that from the 300-day periods in early to mid-2017, the Court may nevertheless consider that evidence from June 2011 and June 2014. *See Dandy*, 388 F.3d at 270; *see also Malin v. Hospira, Inc.*, 762 F.3d 552, 561 (7th Cir. 2014) ("Title VII does not 'bar an employee from using the prior [discrete] acts [that fall outside the statute of limitations] as background evidence in support of a timely claim.' "). The Court will do so, but only to an extent appropriate under the circumstances and authorities.

bachelor's degree in engineering or a related experience, 1-3 years of supervisory or equivalent leadership experience, and mechanical knowledge and experience of equipment. (Docs. 59-1, pg. 12; 64, pg. 21). Strong interpersonal skills, including by resolving conflicts, coaching, mentoring, and facilitating training, are a "[s]ignificant factor" for becoming a general foreman. (Docs. 59-1, pg. 12; 64, pg. 21). As of 2017, Plaintiff had worked for Defendant in manufacturing since 1992. (Doc. 53, pgs. 3-4). She had been working in a supervisory role as a primer foreman, which allegedly has "most of the same general job duties" as a general foreman, since 2011. (Docs. 59-1, pg. 3; 64, pg. 4). In that role, Plaintiff received job performance ratings of "fully competent" in 2016 and 2017. (Docs. 59-1, pg. 7; 64, pg. 13).[3] As to her interpersonal skills, which are "fine" but admittedly "not perfect," Plaintiff notes she was coached but never disciplined following the complaints about her treatment of subordinates. (Docs. 59-1, pg. 8; 64, pgs. 14-15). From these facts, the Court finds Plaintiff, in February and August 2017, had the minimum qualifications stated in Defendant's job description for a general foreman. *See Outley*, 354 F. Supp. 3d at 863; *Gross*, 634 F. Supp. 3d at 493.

On the latter question, involving the comparative qualifications of Plaintiff and the person selected for or promoted to the position of general foreman in February and August 2017, the Court finds Plaintiff and those persons might be viewed by a jury as

---

[3]Defendant has job performance ratings of "marginal," "fair," "fully competent," "superior," and "outstanding." (Docs. 59-1, pg. 5; 64, pg. 10). As stated above, Plaintiff, at times, claims her job performance evaluations were illegitimate and discriminatory. (Doc. 65, pg. 5). However, Plaintiff indicates any time she received at least a "fully competent" job performance rating, it was not discriminatory. (Docs. 59-1, pgs. 7-8; 64, pg. 14). Therefore, Plaintiff admits her job performance ratings of "fully competent," or its equivalent, in 2011 and between 2016 and 2022 were not discriminatory. (Docs. 59-1, pgs. 5-7; 64, pgs. 10-11, 13).

being at least similarly qualified. *See Dandy*, 388 F.3d at 272; *Gross*, 634 F. Supp. 3d at 493; *Outley*, 354 F. Supp. 3d at 864. In February 2017, Plaintiff and Robert Hartman, who was temporarily given additional responsibilities as "acting" general foreman in primer assembly, had worked for Defendant since 1992 and 1994, respectively. (Doc. 59-1, pg. 18; 64, pgs. 30-31). They had been foreman for around 6 and 8 years, respectively. (Docs. 59-1, pg. 18; 60, pg. 22; 64, pgs. 30-31). Mr. Hartman had job performance ratings of "fully competent" in 2015 and "superior" in 2016. (Docs. 59-1, pg. 18; 64, pg. 31). Hartman was ultimately found to be unqualified for the "acting" position due to prior discipline. (Docs. 59-1, pg. 17; 64, pg. 30). Plaintiff alleges she was not subject to discipline at that time. (Doc. 65, pg. 11).

In August 2017, Plaintiff and Mr. Scott, who was appointed to interim general foreman in metals fabrication, cupping, and primer assembly due to organizational changes to Defendant's manufacturing operations, had worked for Defendant since 1992 and 1993, respectively.[4] (Docs. 59-1, pg. 19; 64, pgs. 33-34). They had been foreman for approximately 7 and 9 years, respectively. (Docs. 59-1, pg. 19; 64, pgs. 33-34). In his role as a foreman in metals fabrication and cupping, Mr. Scott purportedly received "superior" job performance ratings. (Docs. 59-1, pg. 19; 64, pgs. 33-34). However, unlike Plaintiff, who was a foreman in primer assembly, Mr. Scott had no supervisory experience in the primer assembly department. (Docs. 59-1, pg. 19; 64, pgs. 33-34).

---

[4]Mr. Scott became a permanent general foreman on March 1, 2018. (Doc. 59-1, pg. 19; 64, pg. 33).

Having made out a *prima facie* case of discrimination based on race and sex, Plaintiff must show Defendant's stated reason for the employment decisions in February and August 2017, namely, the assertion that Mr. Hartman and Mr. Scott were more qualified based on the above considerations and other subjective criteria, was a pretext. *See Outley*, 354 F. Supp. 3d at 863, 866; *Robertson*, 949 F.3d at 377-78; *Runkel*, 51 F.4th at 744-45. The Court finds Plaintiff has done so, creating genuine issues of material fact as to discriminatory intent. (Docs. 59-1, pgs. 18, 19-20; 64, pgs. 31, 34). The record amply demonstrates that Plaintiff had a noted desire to become a general foreman. Further, as discussed above, the record demonstrates that Plaintiff could be viewed as being at least similarly qualified as those selected for the general foreman positions in February and August 2017.

Nevertheless, the record reflects, undisputedly, none of the general foreman positions that interested Plaintiff were posted for an open application process. *See Balele v. Dep't of Indust., Labor and Human Relations*, No. 97-cv-1234, 1997 WL 547920, *2 (7th Cir. Sept. 2, 1997) (stating it is possible, but not automatic, "that in certain circumstances an employer's failure to advertise or post a position might give rise to an inference of intentional discrimination") (citing *EEOC v. Consol. Serv. Sys.*, 989 F.2d 233, 236-37 (7th Cir. 1993); *EEOC v. Chicago Miniature Lamp Works*, 947 F.2d 292, 298 (7th Cir. 1991)). At least between 2017 and 2019, Defendant did not maintain a written policy for arriving at internal promotion decisions. (Docs. 65-1, pg. 12; 68, pg. 53). As such, Plaintiff does not know who was considered for the general foreman positions, whether Plaintiff or individuals other than those selected for or promoted to general foreman were

18

considered for those positions, the decisionmakers for the selections or promotions, or the factors utilized for the selections or promotions. (Docs. 59-1, pg. 10; 64, pg. 18). Plaintiff was barred from throwing her proverbial hat into the ring or understanding Defendant's decision, and each time a Caucasian male became general foreman. *See Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 738-39 (7th Cir. 2006) ("[T]his court has held that '[i]f a plaintiff does not apply for a vacancy that is posted, [she] cannot make a *prima facie* case for unlawful discrimination…under Title VII unless [she] demonstrates that the employer's discriminatory practices deterred [her] from applying.' "). This accumulation of like circumstances creates a genuine dispute of material fact as to pretext.

Notably, Defendant purportedly relied upon subjective criteria to distinguish between Mr. Hartman and Plaintiff despite the fact that he could not hold the position of general foreman due to prior discipline. In other words, given Mr. Hartman's prior discipline, reasonable persons of impartial judgment could find that Plaintiff was better qualified. *See Hobbs*, 573 F.3d at 462; *accord Robertson*, 949 F.3d at 381. Likewise, as to the employment decision pertaining to Mr. Scott, the Court must note that there appeared to be a consolidation of the general foreman position in the metals fabrication, cupping, and primer assembly departments. Both Plaintiff and Mr. Scott had similar qualifications and experience as foremen in some, but not all, of those departments. Nevertheless, after the reorganization of manufacturing operations, the general foreman position was given to Mr. Scott based upon subjective criteria without an open application process. Under the circumstances, a reasonable jury could find the decision not to post the general foreman position for an open application process at any time, despite Plaintiff's noted desire to

hold that position, and to instead rely upon subjective criteria to distinguish similarly qualified individuals, was a mask for discrimination. *See id*. Therefore, the Court finds Plaintiff may pursue her claims of race and sex discrimination against Defendant for the employment decisions in February and August 2017.

Next, as to Plaintiff's claims of retaliation under Title VII, it appears only the employment decision related to Mr. Scott in August 2017 remains at issue. Defendant's employment decision as to Mr. Hartman in February 2017 cannot form the basis for a claim of retaliation because Plaintiff did not complain about discrimination, formally or informally, until March 2017. (Docs. 60, pg. 18 n. 7; 65, pgs. 15-17; 65-1, pg. 8; 68, pgs. 38-40). Also, as discussed above, the Court has already found that Plaintiff did not exhaust her administrative remedies as to the employment decision in November 2019.

As to the employment decision related to Mr. Scott in August 2017, however, the internal ethics hotline call in March 2017 qualifies as protected activity for purposes of a claim of retaliation. *See Runkel*, 51 F.4th at 746; *Brown*, 700 F.3d at 1106; *Carter*, 262 F. Supp. 3d at 725; (Docs. 65-1, pg. 8; 68, pgs. 38-40). Also, Plaintiff suffered an adverse employment action, *i.e.*, she was not selected for the general foreman position in August 2017. *See Runkel*, 51 F.4th at 746; *Brown*, 700 F.3d at 1106. However, unlike her claims of discrimination, Plaintiff cannot satisfy the remainder of her *prima facie* case.

Plaintiff has only relied upon speculation and conjecture related to the timing of her March 2017 internal ethics hotline call and Defendant's employment decision in August 2017. Otherwise, Plaintiff has not directed the Court to any evidence demonstrating a causal link between those events. *See Runkel*, 51 F.4th at 746; *Brown*, 700

20

F.3d at 1106. As alluded to above, Plaintiff is required to show Defendant was motivated by "a 'retaliatory animus,' " and it is not enough that such a motivation could have influenced Defendant. *See Brown*, 700 F.3d at 1108; *see also Outley*, 354 F. Supp. 3d at 869 ("[T]o show a causal connection, Outley must produce some evidence that the City would not have taken the allegedly adverse action but for his protected activity."). That is, unlike the reasoning applied in relation to Plaintiff's discrimination claims, it is not enough that Defendant's decision to select or promote Mr. Scott for the general foreman position, without a posting or open application process, could have been influenced by Plaintiff's March 2017 internal ethics hotline call. After all, Plaintiff attempts to rely upon the fact that Defendant has not posted the general foreman positions or held an open application process dating back to June 2011, nearly 6 years before her initial protected activity.

For these reasons, Defendant's request for summary judgment on the race and sex discrimination claims contained in Counts I and II is **DENIED**. However, the request for summary judgment on the retaliation claims contained in those Counts is **GRANTED**.

### C. Discrimination and Retaliation under the IHRA (Count III)

In support of its Motion on Count III, Defendant argues, as it did with respect to Counts I and II, Plaintiff failed to exhaust her administrative remedies. (Doc. 60, pg. 10). Since Plaintiff's Charge of Discrimination was dismissed by the IDHR, Defendant argues Plaintiff's only options were to seek review by the Illinois Human Rights Commission ("IHRC") or to file a civil action in Illinois. (Doc. 60, pg. 12). Defendant notes Plaintiff, upon receiving the Notice of Dismissal for Lack of Substantial Evidence on April 11, 2022, amended her complaint, bypassing the statutory process in Illinois. (Doc. 60, pg. 13).

21

On the merits of Count III, Defendant argues, as it did for Counts I and II, Plaintiff cannot establish a *prima facie* case of race discrimination or retaliation under the IHRA. (Doc. 60, pg. 10). Defendant stresses there is "no evidence" Plaintiff was passed over for the managerial positions in labor and employee relations due to her race or engagement in protected activity, *i.e.*, her complaints about discrimination. (Doc. 60, pg. 27).

On the one hand, Defendant submits Plaintiff, in her own right, was not qualified for the managerial positions in labor and employee relations. (Doc. 60, pg. 27). Defendant notes, since Plaintiff joined Olin Winchester, LLC, in 1992, she has only worked in manufacturing. (Doc. 60, pg. 28). Notwithstanding her "flawed arguments" to the contrary, and the fact that she has certain degrees related to human resources, Defendant argues Plaintiff has no experience in human resources, labor, or employee relations. (Doc. 60, pgs. 28-29). Therefore, Defendant argues Ms. Murphy found, based on an initial screening of applications, Plaintiff was unqualified. (Docs. 65-1, pg. 16; 67, pgs. 67-68).

On the other hand, Defendant argues, even if Plaintiff was qualified for the managerial positions, she was certainly not more qualified than Ms. Sassenrath. (Doc. 60, pgs. 27, 29). Therefore, Defendant again argues, even if Plaintiff could make out a *prima facie* case of discrimination and retaliation under the IHRA, it acted with legitimate, nondiscriminatory, nonretaliatory, and nonpretextual motivations. (Doc. 60, pg. 10).

In response, Plaintiff initially argues she exhausted her administrative remedies because she was not limited to a review by the IHRC or to filing a civil action in the Illinois state courts, as Defendant argues. (Doc. 65, pg. 18). Instead, Plaintiff asserts that the Court could exercise supplemental jurisdiction under 28 U.S.C. § 1367. (Doc. 65, pg. 18).

Further, on the merits, Plaintiff argues she was qualified for the managerial positions in labor and employee relations. (Doc. 65, pg. 20). Plaintiff has a bachelor's degree in business administration with an emphasis on human resource management, a master's degree in business administration, and a master's degree in human resource management. (Docs. 65, pg. 20; 65-1, pg. 2; 68, pg. 14). Also, since she has worked in a supervisory role in manufacturing since 2009, Plaintiff argues she is "equipped…with several years of human resource[] qualifications," such as leading, training, disciplining, investigating and resolving disputes via the grievance and arbitration processes, issuing performance evaluations, interpreting collective bargaining agreements, and complying with the Family Medical Leave Act. (Docs. 59-1, pg. 25; 64, pgs. 42-44; 65, pg. 20).

Likewise, Plaintiff concedes Mr. Carpenter, who was the manager that hired Ms. Sassenrath, determined Ms. Sassenrath was the most qualified candidate interviewed for the managerial position in labor and employee relations. (Docs. 64, pg. 47; 65, pg. 20). However, after that hire, Mr. Carpenter allegedly determined Ms. Sassenrath was not qualified for that managerial position. (Docs. 64, pg. 47; 65, pg. 20). Eventually, Mr. Carpenter allegedly believed Plaintiff was more qualified than Ms. Sassenrath due to her knowledge of the system, familiarity with the collective bargaining agreement, knowledge of the company, and education. (Docs. 64, pgs. 47-48; 65, pgs. 20-21). If Mr. Carpenter had received her application, then Plaintiff states she would have been hired for the managerial positions in labor and employee relations. (Docs. 64, pg. 47; 65, pg. 21).

As to her claim of retaliation, Plaintiff states the director of human resources and the sole recruiter for the managerial positions in labor and employee relations, Ms.

Murphy, knew Plaintiff filed Charges of Discrimination with the EEOC on February 5, 2018, and May 23, 2019. (Doc. 65, pgs. 19-21). Plaintiff argues Mr. Carpenter, the hiring manager for the managerial positions, never received her application because Ms. Murphy, in the initial screening process, determined that Plaintiff was unqualified. (Docs. 65, pg. 21; 65-1, pg. 16; 68, pg. 66). Plaintiff argues nothing in her application suggested that she was unqualified for the managerial position and Ms. Murphy admitted to never reviewing her resume in the initial screening process; therefore, it is difficult for Plaintiff to understand how Ms. Murphy reached her conclusion. (Docs. 64, pg. 45; 65, pg. 21).

Here, with respect to the exhaustion of her administrative remedies for Count III, at least with respect to the Court's supplemental jurisdiction, the Court agrees with Plaintiff. "[T]he overwhelming majority of district courts within this Circuit…have concluded that federal courts do have subject matter jurisdiction over IHRA claims based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367." *De v. City of Chicago*, 912 F. Supp. 2d 709, 731-32 (N.D. Ill. 2012) (collecting cases). Contrary to Defendant's argument, Plaintiff was not limited to a review by the IHRC or a civil action in Illinois. *See id.*; *see also* 775 ILCS 5/7A-102(C)(4); (Doc. 60, pg. 12). Rather, Plaintiff could properly amend the operative complaint in this case. The Court agrees with Defendant, though, that the Court may only address the allegations reasonably encompassed by Plaintiff's Complainant Information Sheet and Charge of Discrimination to the IDHR, dated January 24 and September 7, 2021, respectively, which relate to Defendant's alleged failure to interview or hire Plaintiff for the managerial positions in labor and employee

relations. *See Dandy*, 388 F.3d at 270 (finding the failure to mention allegations in an EEOC charge meant those claims were not properly before the court); *Moore*, 641 F.3d at 257.

On the merits of Count III, the Court concludes summary judgment must be granted for Defendant. As to the claim of discrimination, Plaintiff is a member of a protected class who was not hired for the managerial positions in labor and employee relations. *See Dandy*, 388 F.3d at 272; *Gross*, 634 F. Supp. 3d at 493. However, a reasonable jury could not find Plaintiff was qualified for those managerial positions or, even if that were not the case, that Plaintiff was better qualified than Ms. Sassenrath for the managerial position in June 2020. *See Dandy*, 388 F.3d at 272; *Gross*, 634 F. Supp. 3d at 493.

As to Plaintiff's qualifications, it is undisputed that, despite her educational background, she has never worked in labor relations or human resources, let alone in a managerial capacity.[5] Defendant's job description for the managerial positions required a minimum of 5 years of labor relations leadership experience with an emphasis on collective bargaining, arbitrations, disciplinary actions, grievances, and manufacturing or industrial experience. (Docs. 59-1, pg. 25; 64, pgs. 41-42). Plaintiff, by her own admission, has never negotiated a collective bargaining agreement, handled a union arbitration, or made arbitration decisions. (Docs. 59-1, pg. 26; 64, pg. 44). As a primer foreman, Plaintiff cannot uphold or reject grievances, is not responsible for performance evaluations of employees other than new hires, is not responsible for giving promotions or pay raises, cannot hire or fire employees, and has no experience in developing policies. (Docs. 59-1,

---

[5]The Court notes it may be for this reason that Ms. Murphy encouraged Plaintiff to apply for lower-level positions in human resources in order to work her way up. (Docs. 59-1, pg. 29; 64, pg. 50).

pg. 26; 64, pgs. 44-45). While Plaintiff believes she garnered valuable, and perhaps related, experience as a primer foreman in manufacturing, that experience does not necessarily equate to the experience sought by Defendant for the managerial positions in labor and employee relations. *See Olsen*, 267 F.3d at 602; *Robertson*, 949 F.3d at 381; *Justise*, 186 Fed. App'x at 682. Therefore, the Court finds Plaintiff cannot make out a *prima facie* case of racial discrimination as to the managerial positions in labor and employee relations.

Alternatively, the record reflects Ms. Sassenrath was much better qualified than Plaintiff for the managerial position in June 2020. Notably, Plaintiff admits that Mr. Carpenter found Ms. Sassenrath was the most qualified candidate interviewed for the managerial position. (Docs. 64, pg. 47; 65, pg. 20). And, at least when compared to Plaintiff at the time of the hire, it cannot reasonably be disputed that was the case. As even Plaintiff admits, Ms. Sassenrath had worked in human resources since 1996, including 16 years "in management-level labor relations and/or HR positions." (Docs. 59-1, pg. 28; 64, pg. 47). Ms. Sassenrath also had experience with union contract negotiations and arbitrations. (Docs. 59-1, pg. 28; 64, pg. 47). For this additional reason, Plaintiff cannot make out a *prima facie* case of discrimination as to the managerial position in labor and employee relations.

The Court notes, when considering the circumstances at the time of Ms. Sassenrath's hire, it makes no difference for purposes of Plaintiff's racial discrimination claim that things ultimately did not work out between Defendant and Ms. Sassenrath. Likewise, it is not appropriate for Plaintiff to rely on the opinions, developed after the fact and based on speculation, of Mr. Carpenter on the comparative qualifications of Plaintiff and Ms. Sassenrath. *See Grace v. Ansul, Inc.*, No. 98-cv-3172, 2001 WL 765132, *3

(N.D. Ill. July 6, 2001) ("It is of course the universally-established law that it is the honest perception of the decisionmaker at the time of an adverse employment decision that controls whether or not prohibited discriminatory motives are at work."); (Docs. 64, pgs. 47-48; 65, pgs. 20-21). Clearly, it would be Ms. Murphy, the director of human resources and the sole recruiter for the managerial positions, who would screen the applicants for the managerial positions, and Mr. Carpenter, the hiring manager, who would select the most qualified candidate. (Docs. 64, pg. 47; 65, pg. 20). Plaintiff takes issue with this arrangement due to the purported failure of Ms. Murphy to review her resume; however, there is no basis on which to conclude that Ms. Murphy could not properly make her assessment based on Plaintiff's application alone. Even if that were a mistake, it does not necessarily lead to an inference of racial discrimination. *See Hunt*, 2022 WL 866170 at *6.

Next, as to her claim of retaliation, Plaintiff engaged in protected activity, *i.e.*, made formal and informal complaints about Defendant, and suffered an adverse employment action, *i.e.*, was not selected for the managerial positions in labor and employee relations. *See Runkel*, 51 F.4th at 746; *Brown*, 700 F.3d at 1106. However, a reasonable jury could not find a causal link between Plaintiff's complaints and Defendant's decision not to select her for those managerial positions. *See Runkel*, 51 F.4th at 746; *Brown*, 700 F.3d at 1106.

Plaintiff has not directed the Court to any evidence that a retaliatory animus was the but-for cause of Defendant's employment decisions. *See Brown*, 700 F.3d at 1106. Plaintiff cannot rely on speculation or conjecture, and her claims with respect to Ms. Murphy's knowledge do not suffice. *See id.* at 1108. It should come as no surprise that Defendant's director of human resources would know about an employee's complaints;

however, without more, Plaintiff cannot rely on an assertion that Ms. Murphy's knowledge could have influenced the hiring decision. *See id.*; *see also Outley*, 354 F. Supp. 3d at 869. Even if Plaintiff could make out a *prima facie* case of retaliation, though, her claim would fail at the next steps of the analysis due to the Court's reasoning in relation to her and Ms. Sassenrath's qualifications. *See Outley*, 354 F. Supp. 3d at 863, 866, 868; *Robertson*, 949 F.3d at 377-78, 381; *Runkel*, 51 F.4th at 744-45; *Hobbs*, 573 F.3d at 462.

For these reasons, summary judgment is **GRANTED** for Defendant on Count III.

### III. CONCLUSION

As explained above, Defendant's Motion is **GRANTED in part** and **DENIED in part**. Summary judgment is **DENIED** as to the race and sex discrimination claims contained in Counts I and II. However, summary judgment is **GRANTED** for Defendant on the retaliation claims contained in those Counts. Furthermore, summary judgment is **GRANTED** for Defendant on Count III in its entirety. At the conclusion of the case, the Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**SO ORDERED.**

Dated: March 20, 2024.

s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge